**STATE OF RHODE ISLAND**
**PROVIDENCE, SC.**

**SUPERIOR COURT**

**RICHARD DEFAZIO; and**
**RLD TECHNOLOGIES, INC**

**Plaintiffs**

**v.**

**C.A. No.** PC05-1707

**EXPETEC CORPORATION f/k/a**
**COMPUTER DOCTOR**
**INTERNATIONAL, INC,**

**Defendant**

#1088216

## COMPLAINT

### I) PARTIES

1) Plaintiff Richard DeFazio is a resident of the State of Rhode Island.

2) Plaintiff RLD Technologies, Inc., is a corporation, incorporated and doing business in the State of Rhode Island.

3) Defendant Expetec Corporation f/k/a Computer Doctor International, Inc. (the "Company"), is, upon information and belief, a corporation, incorporated under the laws of the State of South Dakota, and is in the business of selling franchises in the State of Rhode Island.

### II) FACTS

4) Plaintiffs hereby incorporate by reference paragraphs 1-3 of this complaint as if fully set forth herein.

5) Plaintiffs signed a Franchise Agreement with the Company on or about September 17, 2003, as well as an Addendum to said Franchising Agreement for the State of Rhode Island (the "Agreements") on or about September 24, 2003.

6) The Agreements constituted a legal contract enforceable at law.

7) Pursuant to the Agreements, in exchange for certain Royalty and Marketing Fees paid by Plaintiffs, the Company owed numerous obligations to Plaintiffs, including but

SUPERIOR COURT
FILED
APR - 4 2005
PROVIDENCE & BRISTOL COUNTIES
HENRY S. KINCH JR.
CLERK

(1)

not limited to, an obligation to perform marketing services for Plaintiffs, an obligation to obtain discounted prices from certain computer supply vendors on Plaintiffs' behalf, and an obligation to provide support and assistance to Plaintiffs to aid them in running their franchise.

8) Plaintiffs have paid all of the Royalty and Marketing Fees which they owed pursuant to the Agreements.

9) The Company has failed to perform any of the above mentioned obligations which it owes to Plaintiff pursuant to the Agreement.

10) Upon signing the Agreements Plaintiffs took out a short term loan from the Company in the amount of $30,273.99.

11) This loan matured on or about September 29, 2004.

12) Based on representations made by the Company or its agents, Plaintiffs were led to believe that they would be able to obtain independent long term financing to cover the balance of this loan before the loan reached its maturity date.

13) Plaintiffs were unable to obtain this long term financing at a reasonable interest rate from any financial institution as they were told that the franchise that they had purchased from the Company was too risky.

14) Upon information and belief no other franchise sold by the Company has been able to obtain the type of long term financing that Plaintiffs were led to believe they would receive.

15) As a result of Plaintiffs' inability to obtain this necessary long term financing they were forced to take out a Home Equity Line of Credit using Plaintiff Richard DeFazio's house as collateral.

16) This possibility was never discussed with our Clients' and was an unacceptable alternative to the representations which were made by either the Company or its agents.

17) As part of the Agreements Plaintiffs were required to purchase a van that had the "Expetec" logo affixed to it.

18) On or about September, 2003 Plaintiffs purchased a service van, or, so-called "Technical Assault Vehicle" (the "Van") from the Company.

19) The cost of the Van was Twenty Two Thousand Five Hundred Dollars ($22,500.00).

20) Plaintiffs purchased the Van because the Company or its agents represented to Plaintiffs that the Van would have certain equipment installed in it to enable Plaintiffs to make onsite repairs, including, but not limited to, "a built in custom repair center" that was supposed to be networked.

21) In actuality, the Van had no "custom repair center" and was not networked, making onsite repairs impossible.

22) As a result of their relationship with the Company, Plaintiffs have unnecessarily incurred expenses totaling Eighty Two Thousand Seven Hundred Fifty Four Dollars and Thirty Four Cents ($82,754.34).

**Count I – BREACH OF CONTRACT**

23) Plaintiffs hereby incorporate by reference paragraphs 1-22 of this complaint as if fully set forth herein.

24) By failing to perform its obligations to perform marketing services for Plaintiffs, to obtain discounted prices from certain computer supply vendors on Plaintiffs' behalf, and to provide support and assistance to Plaintiffs to aid them in running their franchise, as provided in the Agreements, the Company has breached its contract with the Plaintiffs.

**WHEREFORE,** the Plaintiffs demands judgment against the Defendant in the sum of $82,754.34 together with interest, costs, and reasonable attorney's fees.

**COUNT II – FRAUD**

25) Plaintiffs hereby incorporate by reference paragraphs 1-24 of this complaint as if fully set forth herein.

26) The Company fraudulently induced Plaintiffs to take out a short-term loan from the Company when the Company or its agents represented to Plaintiffs that obtaining subsequent long-term financing would be obtainable at a reasonable interest rate.

27) The Company or its agents knew this to be a false representation as, upon information and belief, no other franchise sold by the Company has been able to obtain the type of long term financing that our Plaintiffs were led to believe they would receive.

28) But for the Company or its agents false representations Plaintiffs would not have taken out the short-term loan with the Company.

29) As a result of the Company or its agents misrepresentations Plaintiffs were forced to incur unreasonable and unnecessary expenses totaling $82,754.34.

**WHEREFORE,** the Plaintiffs demands judgment against the Defendant in the sum of $82,754.34 together with interest, costs, punitive damages, and reasonable attorney's fees.

**COUNT III – FRAUD**

30) Plaintiffs hereby incorporate by reference paragraphs 1-29 of this complaint as if fully set forth herein.

31) The company fraudulently induced Plaintiffs to purchase the Van, at a cost of $22,500, when the Company or its agents represented to Plaintiffs that the Van would have certain equipment installed in it to enable Plaintiffs to make onsite repairs, including, but not limited to, "a built in custom repair center" that was supposed to be networked.

32) In actuality, the Van had no "custom repair center" and was not networked, making onsite repairs impossible.

33) The Company or its agents were aware of the fact that the Van had no "custom repair center" and was not networked when they represented to Plaintiffs that the Van would be equipped with these features.

34) There were alternatives to the Van which Plaintiff could have purchased at a significantly lower price.

35) But for the Company or its agents' misrepresentations, regarding the Van's capabilities, Plaintiffs would not have purchased the Van.

**WHEREFORE,** the Plaintiffs demands judgment against the Defendant in the sum of $82,754.34 together with interest, costs, punitive damages, and reasonable attorney's fees.

**COUNT IV – UNJUST ENRICHMENT AND QUANTUM MERUIT**

36) Plaintiffs hereby incorporate by reference paragraphs 1-35 of this complaint as if fully set forth herein.

37) Plaintiffs provided valuable services to the Company, incurring expenses and conferring a benefit onto the Company for which Plaintiffs should be reimbursed.

**WHEREFORE,** the Plaintiffs demands judgment against the Defendant in the sum of $82,754.34 together with interest, costs, and reasonable attorney's fees.

## COUNT V – PROMISSORY ESTOPPEL

38) Plaintiffs hereby incorporate by reference paragraphs 1-37 of this complaint as if fully set forth herein.

39) The Company or its agents made numerous promises to Plaintiffs, including but not limited to, promises to perform marketing services for Plaintiffs, to obtain discounted prices from certain computer supply vendors on Plaintiffs' behalf, to provide support and assistance to Plaintiffs to aid them in running their franchise, that long-term financing would be easily obtainable at an acceptable interest rate to cover the short-term loan that Plaintiffs had taken out from the Company, and that the Van would have "a built in custom repair center" that was supposed to be networked.

40) All of these promises were made in an attempt to induce Plaintiffs to purchase a franchise from the Company.

41) It was foreseeable that Plaintiffs would rely on these promises when deciding whether to but a franchise from the Company.

42) Plaintiffs did, in fact, to their detriment, rely on the promises made by the Company and purchased a franchise from the Company.

43) As a result of their detrimental reliance Plaintiffs incurred expenses in the amount of $82,754.34.

**WHEREFORE,** the Plaintiffs demands judgment against the Defendant in the sum of $82,754.34 together with interest, costs, and reasonable attorney's fees.

## Jury Trial

Plaintiffs demand a trial by jury on all counts of their complaint.

Plaintiffs Richard DeFazio and
RLD Technologies, Inc.
By Their Attorneys

R. Park Palmer, Jr., Esq. #6944
Kaplan & Kolb Inc.
1100 Turks Head Building
Providence, RI 02903
Telephone: 401-272-9000
Facsimile: 401-272-9020