FILED
APR 29 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RICHARD DEFAZIO and
RLD TECHNOLOGIES, INC.,
Plaintiffs,

Court File No. 2005-180-S

v.

EXPETEC CORPORATION f/k/a
COMPUTER DOCTOR INTERNATIONAL, INC.,
Defendant.

---

**DEFENDANT'S MOTION TO DISMISS AND/OR STAY PENDING ARBITRATION**

---

Defendant Expetec Corporation ("Expetec") moves to dismiss this litigation and/or stay any further proceedings pending the outcome of arbitration.

In support of its Motion, Expetec has filed a Memorandum of Law and a Declaration of Joanne H. Turner (attached as Exhibit A to the Memorandum).

Respectfully submitted,

Steven M. Richard

Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (Facsimile)

Joanne H. Turner (MN#235787)
Mackall Crounse & Moore PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402
(612) 305-1400
(612) 305-1414 (Facsimile)

Dated: April 29, 2005

ATTORNEYS FOR EXPETEC CORPORATION

5

P123644.1

# CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of April, 2005, I mailed a true copy of the within Defendant's Motion to Dismiss And/Or Stay Pending Arbitration via first-class mail, postage prepaid to:

R. Park Palmer, Jr., Esq.
Kaplan & Kolb, Inc.
1100 Turks Head Building
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

RICHARD DEFAZIO and
RLD TECHNOLOGIES, INC.,

Court File No. 2005-180-S

Plaintiffs,

v.

EXPETEC CORPORATION f/k/a
COMPUTER DOCTOR INTERNATIONAL, INC.,

Defendant.

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STAY PENDING ARBITRATION**

---

In September 2003, Plaintiff Richard DeFazio signed a franchise agreement with South Dakota-based Defendant Expetec Corporation (then known as Computer Doctor International, Inc.) by which DeFazio was granted a franchise to offer maintenance, repair, installation and upgrade services for computers and business equipment in and around Warwick, Rhode Island. *Complaint* ¶ *5.* DeFazio financed his purchase of the franchise with a promissory note payable to Expetec, which incorporates the terms of the Franchise Agreement by reference. *Complaint* ¶ *10.*

After operating his Expetec franchise for more than a year, in February 2005 DeFazio's attorney informed Expetec he was "ceasing [his] business relationship with the Company effective immediately." [1] Since then, DeFazio has paid no royalties or other fees to Expetec.

---

[1] In order to comply with the Court's page limitations, only the pertinent portions of the Franchise Agreement are attached to the Declaration of Joanne H. Turner as Exhibit 1. Copies of the cited correspondence are available for the Court's review upon request.

DeFazio's Franchise Agreement and promissory note with Expetec include an arbitration clause:

> Except as specifically modified by this section, and excepting matters involving provisional remedies as set forth in section 11(B)(3), any controversy or claim relating to this Agreement, including default, and any claim that this Agreement, or any part, is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before the American Arbitration Association, in accordance with its commercial arbitration rules, or any other mutually agreed upon arbitration association. . . . Arbitration shall take place in Minneapolis, Minnesota, unless otherwise agreed by YOU and US.

*Franchise Agreement at section 11(B).*[2] The Franchise Agreement and promissory note further provide:

> The obligation to arbitrate shall be binding upon both parties except with respect to claims relating to OUR trademarks, service marks, patents or copyrights; except claims related to any lease or sublease of real property between YOU and US or related entities; except anti-trust claims; and except requests for temporary restraining orders, preliminary injunctions, or other proceedings, in a court of competent jurisdiction, to obtain interim relief when deemed necessary to preserve the status quo or to prevent irreparable injury pending resolution by arbitration of the actual dispute between the parties.

*Franchise Agreement at section 11(B)(3).* Finally, the Franchise Agreement and promissory note provide:

> Regardless of any provisions of state law to the contrary, WE intend to fully enforce the provisions of this Franchise Agreement, and other documents, including all venue, choice of laws and arbitration provisions, and to rely on federal preemption under the federal arbitration act (9 U.S.C. § 1, et seq.).

*Franchise Agreement at section 11(F).* Accordingly, on March 25, 2005, Expetec commenced arbitration against DeFazio with the American Arbitration Association in Minneapolis. *Expetec Corporation, f/k/a Computer Doctor International, Inc. and*

---

[2] The relevant portions of the Franchise Agreement are attached to the Declaration of Joanne H. Turner as Exhibit 1.

*Richard DeFazio and RLD Technologies, Inc., American Arbitration Association Case No. 65 114 E 00107 05.* DeFazio filed his Complaint in Superior Court for the State of Rhode Island on April 4, 2005.

In an April 18, 2005, letter to the American Arbitration Association, DeFazio's attorney claims the dispute is not subject to arbitration.[3] DeFazio does not contend the Franchise Agreement or its arbitration provision was fraudulently induced. Indeed, DeFazio's Complaint specifically alleges the Franchise Agreement and its Rhode Island Addendum "constituted a legal contract enforceable at law." *Complaint, ¶ 6.* Rather, according to DeFazio's counsel, the Rhode Island Franchise Investment Act bars any attempt by a franchisor to restrict venue to a forum outside of the State of Rhode Island and, therefore, disputes arising under the Franchise Agreement are not subject to arbitration.

> First, pursuant to Rhode Island General Laws (R.I.G.L.) § 19-28.1-14, '(a) provision in a franchise agreement restricting venue to a forum outside this state or requiring the application of the laws of another state is void with respect to a claim otherwise enforceable under this act.' The Franchise Agreement (the 'Agreement') in question in the present matter purports to limit disputes arising under this Agreement to mandatory arbitration in Minnesota. This is clearly an attempt to restrict venue to a forum outside of the State of Rhode Island, and is, therefore, void under the statute quoted above.

*April 18, 2005, letter.*

However, the Federal Arbitration Act preempts state laws which purport to limit or prohibit the arbitration of disputes which fall within the scope of written arbitration agreements.

---

[3] A copy of DeFazio's attorney's letter to the American Arbitration Association is available for the Court's review upon request.

**A. DeFazio's claims are subject to mandatory arbitration.**

DeFazio's Complaint alleges the Franchise Agreement is valid and enforceable. *Complaint, ¶ 6.* The Complaint asserts claims for breach of contract (Count 1), fraud in the inducement of the loan by which DeFazio financed his purchase of the franchise (Count 2), fraud in the inducement of DeFazio's purchase of a service van from Expetec (Count 3), unjust enrichment and quantum meruit (Count 4), and promissory estoppel (Count 5). All of these claims are subject to mandatory arbitration.

The Franchise Agreement, which DeFazio alleges remains valid and enforceable, provides for arbitration of "any controversy or claim relating to this Agreement, including default, and any claim that this Agreement, or any part, is invalid, illegal, or otherwise voidable or void."

DeFazio contends the Rhode Island Franchise Investment Act prohibits the parties from agreeing to arbitrate, rather than litigate, their disputes. To the contrary, the Federal Arbitration Act is clear:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

In Southland Corp. v. Keating, 465 U. S. 1, 104 S. Ct. 852, 79 L.Ed.2d 1 (1984), the United States Supreme Court struck down a provision of the California Franchise Investment Law which purported to require the litigation, rather than arbitration, of the franchisees' state law claims. The Court observed:

> In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Congress has thus mandated the enforcement of arbitration agreements.
>
> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.' We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under State law.
>
> * * *
>
> In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. We hold that § 31512 of the California Franchise Investment Law violates the Supremacy Clause [of the United States Constitution].

465 U. S. at 10-11, 16. Therefore, to the extent the Rhode Island Franchise Investment Act purports to bar arbitration of DeFazio's claims, it is preempted by the Federal Arbitration Act.

Thus, the first question for this Court is whether DeFazio's claims fall within the scope of the arbitration provision. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U. S. 614, 626 105 S. Ct. 3346, 87 L.Ed.2d 444 (1985). In that regard, the United States Supreme Court has directed that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U. S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Here, DeFazio agreed to arbitrate "any controversy or claim relating to this Agreement, including default, and any claim that this Agreement, or any part, is invalid,

illegal or otherwise voidable or void." Each of DeFazio's claims fall within the scope of this provision.

**Count I.** In Count I of his Complaint, DeFazio alleges breach of the Franchise Agreement. Count 1 is subject to arbitration under Section 11 of the Franchise Agreement.

**Count II.** Under the Franchise Agreement, DeFazio paid Expetec a total of $34,000 for his franchise, for direct mail advertising by Expetec of his franchised business, and to purchase Expetec's business system. DeFazio paid an initial down payment of $3,850 and financed the balance with a promissory note payable to Expetec. In Count II of his Complaint, DeFazio alleges he was fraudulently induced to sign a promissory note to Expetec for the initial franchise fee. Because Count II is a controversy or claim related to the Franchise Agreement and DeFazio's purchase of the franchise, it is subject to arbitration. In addition, DeFazio's promissory note to Expetec incorporates by reference the arbitration provision in the Franchise Agreement. As a result, any controversy or claim related to the promissory note is subject to arbitration.

**Count III.** The Franchise Agreement obligated DeFazio to maintain a vehicle displaying Expetec's trademarks, from which DeFazio was to provide mobile services. *Franchise Agreement at Section 6(A)(20).* In Count III, DeFazio alleges he was fraudulently induced to purchase such a vehicle from Expetec. Because Count III is a controversy or claim related to the Franchise Agreement, it is subject to arbitration.

**Count IV.** In Count IV, DeFazio contends he has provided "valuable services" to Expetec for which he should be reimbursed under theories of unjust enrichment and quantum meruit. However, DeFazio's Complaint alleges no relationship to Expetec other than the Franchise Agreement, and alleges the performance of no services to Expetec other than those required under the Franchise Agreement. Because Count IV is therefore a controversy or claim related to the Franchise Agreement, it is subject to arbitration.

**Count V.** Finally, in Count V, DeFazio alleges various promises by Expetec, allegedly made in an attempt to induce him to purchase his Expetec franchise. Because Count IV is a controversy or claim related to the Franchise Agreement, it is subject to arbitration. Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 528 (1st Cir. 1985) (a broad arbitration clause encompasses arbitration of the claim that the contract itself was induced by fraud).

Each of DeFazio's claims is subject to mandatory arbitration.

**B. The Franchise Agreement's arbitration provision, providing for arbitration in Minneapolis, Minnesota, is enforceable.**

DeFazio further contends that, under the Rhode Island Franchise Investment Law, he cannot be compelled to arbitrate outside of the State of Rhode Island.

As to the location of arbitration, in KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42 (1st Circuit 1999), the United States Court of Appeals for the First Circuit held the section of the Rhode Island Franchise Investment Act quoted by DeFazio's counsel is unenforceable because it violates the Federal Arbitration Act, 9 U.S.C.A. § 2.

In that case, the franchise agreement between KKW and Gloria Jean's included an arbitration provision by which the parties agreed to submit all disputes arising out of or related to the franchise agreement, the validity of the franchise agreement, or the parties' relationship to arbitration before the American Arbitration Association in Chicago, Illinois. KKW filed a complaint against Gloria Jean's in Superior Court of the State of Rhode Island, alleging fraudulent inducement of the franchise agreements between the parties. After removal to this Court, Gloria Jean's moved to stay the litigation pending arbitration. This Court denied Gloria Jean's motion to stay with respect to various statutory claims asserted by KKW, finding the choice-of-forum provision in the franchise agreement was "invalid and unenforceable" under § 19-28.1-14.

However, on appeal, the First Circuit held otherwise. The First Circuit held the Rhode Island Franchise Investment Act's bar of all but in-state arbitration violated § 2 of the Federal Arbitration Act, and therefore was unenforceable under the Supremacy Clause of the United States Constitution.

> Section 19-28.1-14's requirement that all claims arising under the Rhode Island Franchise Investment Act be brought in Rhode Island does not apply to all contracts and does not establish a generally applicable contract defense. Its prohibition of non-Rhode Island venues purports to restrict the enforcement of only one sort of contract provision, forum selection clauses, in only one type of contract, franchise agreements. Under § 2 of the FAA, that is impermissible.
>
> * * *
>
> Here, Gloria Jean's and KKW chose Chicago, Illinois as the forum for the arbitration of their disputes. Their choice of arbitral forum should have been honored by the district court. Courts may not rewrite the parties' agreements and compel arbitration of their dispute in a forum which is not one of those enumerated in an arbitration agreement's forum selection clause.

184 F.3d at 52.

DeFazio must be compelled to arbitrate his claims against Expetec in Minneapolis.

**C. Because RLD Technologies claims to be a party to the Franchise Agreement, it cannot avoid arbitration.**

DeFazio signed the Franchise Agreement and promissory note in his individual capacity. However, DeFazio's Complaint also names as a plaintiff RLD Technologies, Inc., and the Complaint alleges that RLD Technologies is a signatory to the Franchise Agreement. *Complaint ¶ 5 ("Plaintiffs signed a Franchise Agreement with the Company on or about September 17, 2003).* According to information maintained by the Rhode Island Secretary of State, RLD Technologies, Inc., was incorporated by DeFazio in the fall of 2003. Because RLD Technologies claims to be a party to the Franchise Agreement and, by extension, to its arbitration provision, RLD Technologies should be estopped from claiming its claims against Expetec are not subject to arbitration.

**D. Because all of Plaintiffs' claims are subject to arbitration, this Court should exercise its discretion to dismiss the Complaint.**

Under the Federal Arbitration Act, where issues before the Court are arbitrable, this Court must "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. However, as this Court has recognized, where all issues presented in a lawsuit are arbitrable, the Court may exercise its discretion to dismiss the Complaint entirely. Large v. Conseco Finance Servicing Corp., 167 F.Supp.2d 203, 207 (D.R.I. 2001), aff'd. 292 F.3d 49 (1st Cir. 2002).

As the foregoing has shown, all of Plaintiff's claims are subject to arbitration. Expetec has already commenced an arbitration proceeding against DeFazio and RLD Technologies, as provided by the Franchise Agreement. Each of Plaintiffs' claims can, and should, be adjudicated in that proceeding. Moreover, because Plaintiffs seek only

monetary relief, the arbitrator has authority to award all relief Plaintiffs seek.[4] Because all of DeFazio's claims can be fully resolved by arbitration, this Court should exercise its discretion to dismiss DeFazio's Complaint.

## CONCLUSION

For the foregoing reasons, Expetec's motion to dismiss the Complaint should be granted. Alternatively, this action should be stayed pending the outcome of arbitration.

Respectfully submitted,

Steven M. Richard

Steven M. Richard (4403)
NIXON PEABODY LLP
One Citizens Plaza, Suite 700
Providence, RI 02903-1345
(401) 454-1000
(401) 454-1030 (facsimile)

Joanne H. Turner (MN # 235787)
MACKALL, CROUNSE & MOORE, PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402
(612) 305-1400
(612) 305-1414 (facsimile)

ATTORNEYS FOR
EXPETEC CORPORATION

JHT/jht#741438v1

[4] Under Section 11(C), both parties to the Franchise Agreement waived the right to trial by jury. Under Section 11(B)(1), both parties waived punitive or exemplary damages, whether in arbitration, judicial proceeding, or otherwise.

**CERTIFICATE OF SERVICE**

I certify that, on April 29, 2005, a copy of this memorandum was mailed via first-class mail, postage prepaid:

R. Park Palmer, Esq.
Kaplan & Kolb, Inc.
1100 Turks Head Building
Providence, RI 02903

Steven M. Richard

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

RICHARD DEFAZIO and
RLD TECHNOLOGIES, INC.,

Court File No. 2005-180-S

Plaintiffs,

v.

EXPETEC CORPORATION f/k/a
COMPUTER DOCTOR INTERNATIONAL, INC.,

Defendant.

---

**DECLARATION OF JOANNE H. TURNER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STAY PENDING ARBITRATION**

---

Pursuant to 28 U.S.C. § 1746, Joanne H. Turner states:

1. I am a Member of the firm of Mackall, Crounse & Moore, PLC, counsel of record to Defendant Expetec Corporation. If called upon to testify as to the facts set forth herein, I could and would competently do so.

2. Attached to my Declaration as Exhibit 1 is a true and correct copy of pertinent portions of the Franchise Agreement between Expetec and Richard DeFazio.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of April 2005 in Minneapolis, Minnesota.

Joanne H. Turner

JHT/jht#742092v1

(B) Arbitration

Except as specifically modified by this section, and excepting matters involving provisional remedies as set forth in section 11(B)(3), any controversy or claim relating to this Agreement, including default, and any claim that this Agreement, or any part, is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before the American Arbitration Association, in accordance with its commercial arbitration rules, or any other mutually agreed upon arbitration association. The rules of the American Arbitration Association, or any other mutually agreed upon arbitration association, are modified to permit discovery pursuant to the rules of civil procedure for South Dakota. If an individual arbitrator is used, that person shall have knowledge and experience concerning franchising. If an arbitration panel is used, one member shall have franchise law experience, one member shall be a certified public accountant, and the third member shall have experience in the business of providing computer services and sales to the public similar to those provided by System franchisees. Arbitration shall take place in Minneapolis, Minnesota, unless otherwise agreed by YOU and US.

(1) Judgment Upon Arbitration

Judgment upon an arbitration award may be entered in any court having competent jurisdiction and shall be binding, final and non-appealable. No punitive or exemplary damages shall be awarded against either US or YOU in an arbitration proceeding, a judicial proceeding, or otherwise, and are hereby waived.

(2) Effective After Termination

This arbitration provision shall be deemed to be self-executing and shall remain in full force and effect after the termination of this Agreement. If either party fails to appear at any properly noticed arbitration proceeding, an award may be entered against the non-appearing party, by default or otherwise.

(3) Obligation To Arbitrate

The obligation to arbitrate shall be binding upon both parties except with respect to claims relating to OUR trademarks, service marks, patents, or copyrights; except claims related to any lease or sublease of real property between YOU and US or related entities; except anti-trust claims; and except requests for temporary restraining orders, preliminary injunctions, or other proceedings, in a court of competent jurisdiction, to obtain interim relief when

EXHIBIT 1
tabbies

deemed necessary to preserve the status quo or to prevent irreparable injury pending resolution by arbitration of the actual dispute between the parties.

If a party fails to appropriately initiate arbitration pursuant to section 11(B), and, the time limitations set forth in section 11(D), the right to any remedy shall be deemed waived and forfeited by such party.

(C) Waiver of Jury Trial

**WE** and **YOU** agree that any controversy or claim relating to this Agreement, or arising out of the franchise relationship, which is not handled through arbitration proceedings, shall be tried to the court without a jury, both parties hereby specifically waiving the right to trial by jury.

(D) Statute of Limitations

**WE** and **YOU** agree that no action, whether by arbitration, judicial determination, or otherwise, for damages, injunctive, equitable or other relief, including rescission, will be maintained by any party to enforce any liability or obligation of the other party, whether arising from this Agreement or otherwise, unless initiated before the expiration of the earlier of one (1) year after the date of discovery of the facts resulting in the alleged liability or obligation, or two (2) years after the date of the first act or omission giving rise to the alleged liability or obligation, except that where applicable law mandates or makes possible, by notice or otherwise, a shorter period, the shorter period shall apply.

(E) South Dakota Forum

As more specifically set forth in section 10(A), the parties agree that a portion of the franchise activities take place in Aberdeen, Brown County, South Dakota. The parties agree, and **YOU** consent, that any non-arbitration litigation between the parties, arising, directly or indirectly, from the franchise relationship, shall be commenced and maintained either in the courts of the State of South Dakota in Aberdeen, Brown County, South Dakota, or the United States District Court, District of South Dakota, Northern Division. **YOU** specifically consent to the jurisdiction of such Courts.

(F) Federal Preemption

Regardless of any provisions of state law to the contrary, **WE** intend to fully enforce the provisions of this Franchise Agreement, and other documents, including all venue, choice of laws and arbitration provisions, and to rely on federal preemption under the federal arbitration act (9 U.S.C. § 1, ET SEQ.)