**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD DEFAZIO; and RLD TECHNOLOGIES, INC** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. 2005-180-S** |
| **EXPETEC CORPORATION f/k/a COMPUTER DOCTOR INTERNATIONAL, INC,** | : | |
| **Defendant** | : | |

**PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION TO DISMISS AND/OR STAY PENDING ARBITRATION**

Plaintiffs hereby object to Defendant's motion to dismiss this litigation and/or stay any further proceedings pending the outcome of arbitration.

In support of their Objection, Plaintiff has filed a Memorandum of Law.

Respectfully Submitted,

Plaintiffs Richard DeFazio and
RLD Technologies, Inc.
By Their Attorneys

Michael A. Marciano, Esq. #6486
Kaplan & Kolb Inc.
1100 Turks Head Building
Providence, RI 02903
Telephone: 401-272-9000
Facsimile: 401-272-9020

10

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2005, I mailed a true copy of the within "Plaintiffs' Objection to Defendant's Motion to Dismiss and/or Stay Pending Arbitration" via first-class mail, postage prepaid to:

Steven M. Richard, Esq.
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (Facsimile)

Joanne H. Turner, Esq.
Mackall Crounse & Moore PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402
(612) 305-1400
(612) 305-1414 (Facsimile)

Renee R. Mobley
Case Manager
American Arbitration Association
13455 Noel Road Suite 1750
Dallas, TX 75240
(972) 702-8222
(972) 490-9008

Michael A. Marciano [signature]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD DEFAZIO; and RLD TECHNOLOGIES, INC** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. 2005-180-S** |
| **EXPETEC CORPORATION f/k/a COMPUTER DOCTOR INTERNATIONAL, INC,** | : | |
| **Defendant** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION TO DISMISS AND/OR STAY PENDING ARBITRATION**

## Introduction

This case concerns a dispute over the dissolution of a franchise relationship. The individual Plaintiff, Richard DeFazio, operated an Expetec (formerly Computer Doctor International) franchise from September of 2003, until February of 2005. Plaintiffs and Defendant signed a Franchise Agreement on or about September 17, 2003, and an "Addendum to Uniform Franchise Offering Circular for the State of Rhode Island (the "Addendum") (both collectively hereinafter referred to as the "Agreements") on or about September 24, 2003. Amended Complaint ¶ 5. The Agreements permitted the Plaintiffs to operate a franchise of the Defendant for the purpose of offering maintenance, repair, installation and upgrade services for computers and business equipment in and around Warwick, Rhode Island. Pursuant to the Agreements, in exchange for specified Royalty and Marketing Fees that have been paid in full by the Plaintiffs, Defendant agreed to several obligations to the Plaintiffs. Amended Complaint ¶¶ 6-7.

Plaintiffs' suit is based on the failure of the Defendant to meet these obligations, the Defendant's fraudulent inducement of the Plaintiffs to take a loan from the Defendant and to enter the Agreements, fraudulent inducement to purchase a van from the Defendant by a separate arrangement and common law remedies in the event that the Agreements are rescinded.

Defendant alleges that these disputes are arbitrable under the Agreements. This assertion is in clear contravention of the language of the Agreements. Also, the van purchase is completely unrelated to the Agreements, and the other quasi-contractual remedies are only available if the Agreements are found to be voidable and/or rescinded.

Accordingly, Defendant's Motion to Dismiss and/or Stay Pending Arbitration should be denied, and this case should continue under the jurisdiction of this Court.

## I. The unambiguous language of the Agreements state that the disputes in question are to be resolved by Rhode Island law in Rhode Island courts, therefore Defendant's Motion to Dismiss and/or Stay pending arbitration should be denied.

Defendant's memorandum cites what it refers to as the "arbitration clauses" of the Franchise Agreement. Plaintiffs do not dispute that the language cited is accurate. However, Defendant's memorandum completely ignores the language of the Addendum signed on September 24, 2003 (one week after the Franchise Agreement) by both the individual Plaintiff, Richard DeFazio, and the CEO of the Defendant, Lonnie Helgerson. Addendum, attached hereto as Exhibit A. The Addendum states that the Franchise Agreement is amended and revised to change certain terms. Specifically, the Addendum states that:

> "1. Item 17(v) shall further provide that disputes concerning the Franchise Agreement shall be governed by Rhode Island law and subject to he jurisdiction of the federal or state courts of Rhode Island.

> 2. Item 17(w) shall further provide that the Franchise Agreement shall be construed according to the laws of the state of Rhode Island.
> All other rights, obligations, and provisions of the Franchise Agreement shall remain in full force and effect. Only the sections specifically added to, amended, or deleted by this Addendum shall be affected."

Exhibit 1

Unfortunately, the Addendum is, generously put, drafted in a confusing manner. Item 17 of the Franchise Agreement has no section (v) or (w), nor does any section or subsection in the agreement. No sections are "specifically added to, amended, or deleted," so the language must be inserted somewhere, presuming that the language has to have some reasonable purpose. The only logical place for the Addendum language is Section 11 of the Franchise Agreement, entitled "RESOLUTION OF DISPUTE AND CHOICE OF FORUM." See Franchise Agreement p. 29-31, attached hereto as Exhibit B. The essential issue is how to read the language of the Addendum with the language of Section 11. Section 11 consists of the "arbitration clause" cited almost verbatim by the Defendant, as well as clauses for good faith discussion of disputes, waiver of jury trial, statute of limitations, South Dakota as the forum for suit and federal preemption.

Defendant has made no attempt to escape obligations of good faith. Defendant also makes little to no attempt to salvage the waiver of jury trial, the lessened statute of limitations, or South Dakota as the forum for suit, and the Addendum clearly inserts Rhode Island law and jurisdiction in those areas. Defendant asserts, however, that the arbitration clause and effects of federal preemption (and non-federal terms piled into that heading) survive the language of the Addendum, while a close examination of the language reveals that assertion to be erroneous.

When interpreting contractual terms, it has long been held in Rhode Island that the language at issue should be interpreted as a matter of law in accordance with its plain terms. Clark-Fitzpatrick, Inc./Franki Foundation Co. v. Gill, 652 A.2d 440, 443 (R.I. 1994). The Rhode Island Supreme Court also held in Rotelli v. Catanzaro, that instruments executed in the course of a single transaction at the same time and to accomplish the same purpose should be read and construed together. 686 A.2d 91, 94 (R.I. 1996). The terms used must be given their plain and ordinary meaning, and the test to be applied is not what the drafter intended, but what the ordinary similarly situated reader would understand them to mean. See Campbell v. Norfolk & Dedham Mutual Fire Insurance Co., 682 A.2d 933, 935 (R.I. 1996).

Neither side disputes that several, but not all, of Plaintiffs' claims are, in the words of the Addendum, "disputes concerning the Franchise Agreement." See Exhibit A. The plain terms of the Addendum state that "disputes concerning the Franchise Agreement" are governed by Rhode Island law and subject to the jurisdiction of Rhode Island courts. The Addendum does not say certain disputes, nor does it say non-arbitrable disputes, but simply "disputes concerning the Franchise Agreement." Subsection (B) of Section 11 states in pertinent part that "any controversy or claim relating to this Agreement . . . shall be submitted to arbitration . . . in Minneapolis, Minnesota, unless otherwise agreed." Exhibit B, p. 30. The language of the Addendum, is as inclusive as the Section 11 language, so should accordingly have the same breadth and depth.

The Paragraph regarding the federal arbitration act is not pertinent, as the parties have clearly contracted to settle disputes in Rhode Island courts under Rhode Island law,

rather than use arbitration. To the extent that the federal preemption heading promotes the enforcement of the Franchise Agreement "and other documents," the negotiated terms of the Addendum should be applied according to their plain meaning. Exhibit B, p. 31.

Here, unlike in Rotelli where the instruments were executed at the same time and thus had to be read together, the later date on the Addendum, as well as its explicit articulation of its purpose of amending and revising the Franchise Agreement, plainly indicates that all disputes concerning the Franchise Agreement are governed by Rhode Island law and subject to the jurisdiction of Rhode Island courts. With no ambiguity present, the Addendum provides for dispute resolution in Rhode Island courts, rather than arbitration.

Even if one were to find ambiguity when reading the Addendum with Section 11, such ambiguity favors the Plaintiffs, according to Rhode Island law. In Rhode Island, the courts "have consistently held that a contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." The Court cautions, however, that it will not "stretch its imagination in order to read ambiguity into a [contract] where none is present." Textron, Inc. v. Aetna Casualty and Surety Co., 638 A.2d 537, 541 (R.I. 1994).

Most pertinently, the Rhode Island Supreme Court has consistently held that the ambiguous contractual terms are to be construed against the drafter. Employers Mutual Cas. Co. v. Pires, 723 A.2d 295, 298 (R.I. 1999) (finding that insurance policy was to be construed in favor of the insured and against the insurer); Fryzel v. Domestic Credit Corp., 120 R.I. 92, 385 A.2d 663, 666-67 (1978) (holding that ambiguities in a contract must be construed against the drafter of the document); A.C. Beals v. Rhode Island

Hosp., 110 R.I. 275, 292 A.2d 865, 872 (1972) (stating that any ambiguities or omissions in an agreement are to be construed against the drafting party).

Plaintiffs contend that there is no ambiguity in the Addendum's replacement of the arbitration language of Section 11 of the Franchise Agreement, and that an assertion of ambiguity by the Defendant would be a stretch of imagination disfavored by the Rhode Island Supreme Court in Textron. See 638 A.2d at 541. However, if there is any ambiguity in reading the Addendum and Section 11 of the Franchise Agreement, this Court should similarly construe the language in favor of the Plaintiffs, as the Defendant drafted both documents and was in a similar position as the insurers and banks in the above cited cases.

Accordingly, Defendant's Motion to Dismiss and/or Stay Pending Arbitration should be denied.

**II. Even if disputes concerning the Franchise Agreement are found to be arbitrable, Count III concerning the Van relates to conduct unrelated to the Agreements, is not subject to arbitration, and therefore must be tried in a Rhode Island court.**

The Franchise Agreement stated that Plaintiffs were required to "Maintain a vehicle (as specified in the Trademark and Identity Standards Manual) in a neat, clean, and undamaged condition; the vehicle must be mechanically sound and white in color with the appropriate System marks affixed." See Franchise Agreement Section 6(A)(20) p 12, attached hereto as Exhibit C. Nowhere in the Franchise Agreement, nor in any other material referenced, does it say that Plaintiffs were required to purchase the van from the Defendant. The purchase was made through a completely separate agreement, unrelated and unattached to the Franchise Agreement. The plain language clearly states that Plaintiffs must maintain "a vehicle" with Defendant's marks, but states no

requirement of **where** the Van must be purchased from. Defendant's assertion that Plaintiff's fraud count concerning was is related to the Franchise Agreement is therefore incongruent with the plain language of 6(A)(20).

In an unrelated transaction, apart from the Agreements, Plaintiffs agreed to purchase a service van from the Defendant, known as a "Technical Assault Vehicle" for the sum of $22,500. Amended Complaint ¶ 31. The Defendant represented to the Plaintiffs that the van would have equipment installed in it to allow Plaintiffs to make on-site repairs, by way of a "built in custom repair center." Amended Complaint ¶ 31. The van sold by Defendants had no such "custom repair center" and was not networked to allow on site repairs, as was promised. Amended Complaint ¶ 32.

This Court could potentially find that there was a breach of the Agreements, but that separate communications by and documents of the Defendant regarding the van did not constitute fraud. Or that Defendants committed fraud regarding both deals. Either way, the inquiries are largely, if not exclusively separate, and the van negotiations were separate from the Agreements and were also documented separately. Since the conduct that the Plaintiffs' allege concerning the van is not a "dispute concerning the Franchise Agreement," even under the Defendant's incorrect assessment of the Addendum, Count III is not subject to arbitration.

III. **Even if disputes concerning the Franchise Agreement are found to be arbitrable, Counts IV and V are quasi-contractual remedies that would only apply if the Court grants Plaintiffs the alternative remedy of rescission.**

Rhode Island General Laws § 19-28.1-21 states that as part of certain suits under the Franchise Investment Act, "the franchisee may also sue for rescission" of the relevant franchise agreement(s). Accordingly, rescission of the Agreements would eliminate the

arbitration clause as well as the other obligations therein. If the Agreements are rescinded, eliminating the arbitration clause and claims under the Agreements, Plaintiffs would need to resort to the quasi contractual relief which they have pleaded: unjust enrichment, quantum meruit and promissory estoppel. Whether or not these remedies are related to the Agreements is of no moment, as they would by their very nature only become pertinent if the Agreements, and the arbitration clause, are vanquished. Since the Plaintiffs' allegations in Counts IV and V are not properly viewed as "concerning the Franchise Agreement," they are not subject to arbitration.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss and/or Stay Pending Arbitration should be denied.

Respectfully Submitted,

Plaintiffs Richard DeFazio and
RLD Technologies, Inc.
By Their Attorneys

Michael A. Marciano, Esq. #6486
Kaplan & Kolb Inc.
1100 Turks Head Building
Providence, RI 02903
Telephone: 401-272-9000
Facsimile: 401-272-9020

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2005, I mailed a true copy of the within "Memorandum in Support of Plaintiffs' Objection to Defendant's Motion to Dismiss and/or Stay Pending Arbitration" via first-class mail, postage prepaid to:

Steven M. Richard, Esq.
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (Facsimile)

Joanne H. Turner, Esq.
Mackall Crounse & Moore PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402
(612) 305-1400
(612) 305-1414 (Facsimile)

Renee R. Mobley
Case Manager
American Arbitration Association
13455 Noel Road Suite 1750
Dallas, TX 75240
(972) 702-8222
(972) 490-9008

[signature]

**ADDENDUM TO UNIFORM FRANCHISE OFFERING CIRCULAR FOR THE STATE OF RHODE ISLAND**

THIS ADDENDUM is incorporated in and made a part of the Uniform Franchise Offering Circular entered into between **COMPUTER DOCTOR INTERNATIONAL, INC.**, a South Dakota Corporation (Computer Doctor), 12 2nd Avenue SW, Aberdeen, South Dakota 57401, and Richard Defazio ("YOU") whose address is 90 Robins Way, Warwick, RI 02888 and is effective on the date specified in section 25 of the Franchise Agreement.

The Franchise Agreement is amended and revised as follows:

1. Item 17(v) shall further provide that disputes concerning the Franchise Agreement shall be governed by Rhode Island law and subject to the jurisdiction of the federal or state courts of Rhode Island.

2. Item 17(w) shall further provide that the Franchise Agreement shall be construed according to the laws of the state of Rhode Island.

All other rights, obligations, and provisions of the Franchise Agreement shall remain in full force and effect. Only the sections specifically added to, amended, or deleted by this Addendum shall be affected.

**FRANCHISEE:**

____________________________
Name of Business Organization

Richard DeFazio

[signature]

Date: 9/24/03

____________________________
Witness

**FRANCHISOR:**

**COMPUTER DOCTOR INTERNATIONAL, INC.**

By: [signature]

Its: CEO

Aberdeen, South Dakota; as such, the parties agree that the Agreement shall be deemed made and entered into in South Dakota and shall be governed and construed according to the laws of South Dakota and the United States. In entering into this Agreement, **YOU** acknowledge that **YOU** sought and voluntarily accepted the provisions in this Agreement and elected to become a part of the System, which is headquartered in Aberdeen, South Dakota, and that this Agreement contemplates, and will result in, business relationships with **OUR** headquarters personnel.

(B) Language of Agreement

The language in this Agreement shall be construed as a whole according to its usual, customary, and fair meaning, and neither strictly for nor against either **US** or **YOU**. All words used in this Agreement, regardless of the number and gender in which they are used, shall be construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Agreement, or any part of it, may require, as if the words had been fully and properly written in the appropriate number and gender.

(C) Descriptive Headings

Descriptive section headings are for convenience only and are not to be construed as a part of this Agreement nor in any way defining, limiting, or amplifying any provisions.

(D) Reasonable Exercise of Discretion

Whenever, pursuant to this Agreement, **WE** are given the right to act in **OUR** sole discretion, or as **WE** deem appropriate, such action will be exercised in a reasonable manner.

11. RESOLUTION OF DISPUTES AND CHOICE OF FORUM

**WE** and **YOU** agree that the provisions contained in this section are reasonable and were specifically bargained for.

(A) Good Faith Discussion

**WE** and **YOU** recognize that while **WE** and **YOU** intend to work together in harmony and with the best interest of the System in mind, it is possible that disagreements between **YOU** and **US** may occur in the future. **WE** and **YOU** agree to attempt to resolve such differences through good faith discussion whenever possible.

(B) Arbitration

Except as specifically modified by this section, and excepting matters involving provisional remedies as set forth in section 11(B)(3), any controversy or claim relating to this Agreement, including default, and any claim that this Agreement, or any part, is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before the American Arbitration Association, in accordance with its commercial arbitration rules, or any other mutually agreed upon arbitration association. The rules of the American Arbitration Association, or any other mutually agreed upon arbitration association, are modified to permit discovery pursuant to the rules of civil procedure for South Dakota. If an individual arbitrator is used, that person shall have knowledge and experience concerning franchising. If an arbitration panel is used, one member shall have franchise law experience, one member shall be a certified public accountant, and the third member shall have experience in the business of providing computer services and sales to the public similar to those provided by System franchisees. Arbitration shall take place in Minneapolis, Minnesota, unless otherwise agreed by **YOU** and **US**.

(1) Judgment Upon Arbitration

Judgment upon an arbitration award may be entered in any court having competent jurisdiction and shall be binding, final and non-appealable. No punitive or exemplary damages shall be awarded against either **US** or **YOU** in an arbitration proceeding, a judicial proceeding, or otherwise, and are hereby waived.

(2) Effective After Termination

This arbitration provision shall be deemed to be self-executing and shall remain in full force and effect after the termination of this Agreement. If either party fails to appear at any properly noticed arbitration proceeding, an award may be entered against the non-appearing party, by default or otherwise.

(3) Obligation To Arbitrate

The obligation to arbitrate shall be binding upon both parties except with respect to claims relating to **OUR** trademarks, service marks, patents, or copyrights; except claims related to any lease or sublease of real property between **YOU** and **US** or related entities; except anti-trust claims; and except requests for temporary restraining orders, preliminary injunctions, or other proceedings, in a court of competent jurisdiction, to obtain interim relief when

deemed necessary to preserve the status quo or to prevent irreparable injury pending resolution by arbitration of the actual dispute between the parties.

If a party fails to appropriately initiate arbitration pursuant to section 11(B), and, the time limitations set forth in section 11(D), the right to any remedy shall be deemed waived and forfeited by such party.

(C) Waiver of Jury Trial

**WE** and **YOU** agree that any controversy or claim relating to this Agreement, or arising out of the franchise relationship, which is not handled through arbitration proceedings, shall be tried to the court without a jury, both parties hereby specifically waiving the right to trial by jury.

(D) Statute of Limitations

**WE** and **YOU** agree that no action, whether by arbitration, judicial determination, or otherwise, for damages, injunctive, equitable or other relief, including rescission, will be maintained by any party to enforce any liability or obligation of the other party, whether arising from this Agreement or otherwise, unless initiated before the expiration of the earlier of one (1) year after the date of discovery of the facts resulting in the alleged liability or obligation, or two (2) years after the date of the first act or omission giving rise to the alleged liability or obligation, except that where applicable law mandates or makes possible, by notice or otherwise, a shorter period, the shorter period shall apply.

(E) South Dakota Forum

As more specifically set forth in section 10(A), the parties agree that a portion of the franchise activities take place in Aberdeen, Brown County, South Dakota. The parties agree, and **YOU** consent, that any non-arbitration litigation between the parties, arising, directly or indirectly, from the franchise relationship, shall be commenced and maintained either in the courts of the State of South Dakota in Aberdeen, Brown County, South Dakota, or the United States District Court, District of South Dakota, Northern Division. **YOU** specifically consent to the jurisdiction of such Courts.

(F) Federal Preemption

Regardless of any provisions of state law to the contrary, **WE** intend to fully enforce the provisions of this Franchise Agreement, and other documents, including all venue, choice of laws and arbitration provisions, and to rely on federal preemption under the federal arbitration act (9 U.S.C. § 1, ET SEQ.)

(10) Grant discounts and participate in promotions required by US.

(11) Accept cash, checks, credit cards, debit cards, and other methods and forms of payment required by US.

(12) Sell only those products and services approved, in writing, by US.

(13) Retain and exercise, at all times, management control over YOUR franchise; YOU shall not enter into any lease, management agreement, or other similar arrangement for the operation of YOUR business, or any part of the business, without OUR prior written consent.

(14) Provide customers with all, but only those, uniform warranties and guaranties, as may be expressly provided, in writing, by US; all customer complaints must be handled promptly and courteously to the reasonable satisfaction of the customer.

(15) Maintain products, equipment, and supplies, of the types that WE require, and in quantities which are reasonable for the proper operation of YOUR business.

(16) Not employ, or seek to employ, any person who is, at that time, employed by US, or by any System franchisee, nor shall YOU, directly or indirectly, induce such person to leave his/her employment.

(17) Hire and supervise efficient, competent, and courteous persons for the operation of YOUR business, and, require all employees, including YOURSELF, to work in clean, neat, and well-maintained attire (uniforms) as reasonably required by US.

(18) Advise US, within four (4) hours, of any sales leads, or potential customers, known to YOU, and who YOU cannot sell to or serve because of the provisions of this Agreement, or who, for whatever reason, YOU do not choose to sell to or serve.

(19) Maintain a business telephone that is answered and identified as "Expetec" (or other trade name required or approved by US) during the customary operational hours for businesses in YOUR Franchised Area.

(20) Maintain a vehicle (as specified in the Trademark and Identity Standards Manual) in a neat, clean, and undamaged condition; the vehicle must be mechanically sound and white in color with the appropriate System marks affixed.