UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RICHARD DEFAZIO and<br>RLD TECHNOLOGIES, INC.,<br>Plaintiffs,<br><br>v.<br><br>EXPETEC CORPORATION f/k/a<br>COMPUTER DOCTOR INTERNATIONAL, INC.,<br>Defendant. | : | CA 05-180 S |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This case concerns a dispute over the dissolution of a franchise relationship. Before the court are three motions: 1) Defendant's Motion to Dismiss and/or Stay Pending Arbitration (Document ("Doc.") #5) ("Motion to Dismiss"); 2) Plaintiffs' First Motion to Amend Complaint (Doc. #6) ("Motion to Amend"); and 3) Plaintiffs' Motion to Stay Arbitration Proceedings (Doc. #7) ("Motion to Stay Arbitration"). The Motion to Dismiss and Motion to Stay have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(a). The Motion to Amend has been referred for determination. A hearing was conducted on June 14, 2005. After listening to the arguments presented, reviewing the memoranda submitted, and performing independent research, I recommend that the Motion to Dismiss be granted and that the Motion to Stay Arbitration be denied. The Motion to Amend will be denied by separate order.

**Facts and Travel**

On or about September 17, 2003, Plaintiffs Richard DeFazio ("DeFazio") and RLD Technologies, Inc. ("RLD"), (collectively "Plaintiffs") signed a Franchise Agreement with Defendant Expetec Corporation, f/k/a Computer Doctor International, Inc. ("Expetec"

or "Defendant"), a South Dakota corporation. See Complaint (Doc. #1) ¶¶ 1-3, 5. Plaintiffs signed an Addendum on or about September 24, 2003. See id. ¶ 5. The Franchise Agreement and the Addendum are collectively referred to as the "Agreements." See id. Upon signing the Agreements, Plaintiffs took out a short-term loan from Expetec in the amount of $30,273.99. See id. ¶ 10. Plaintiffs also purchased a service van from Expetec for $22,500.00. See id. ¶¶ 18-19.

On April 4, 2005, Plaintiffs filed their Complaint in the Providence County Superior Court. See Complaint at 1. The action was removed to this court on April 28, 2005. See Notice of Removal (Doc. #2).

Plaintiffs allege that Expetec has breached its contractual obligations under the Agreements by failing to provide marketing services for Plaintiffs, failing to obtain discounted prices from certain computer supply vendors on Plaintiffs' behalf, and failing to provide support and assistance to Plaintiffs in running their franchise (Count I). See Complaint ¶ 24. They charge that Expetec fraudulently induced them to take out the short-term loan by falsely representing that Plaintiffs subsequently would be able to obtain long-term financing at a reasonable interest rate and that as a result of this misrepresentation Plaintiffs were forced to incur substantial expenses (Count II). See id. ¶¶ 26-29. Plaintiffs also charge that Expetec fraudulently induced them to purchase the service van by falsely representing that it would have certain equipment installed, including "a built in custom repair center," id. ¶ 31, which would be "networked," id., and would enable Plaintiffs to make onsite repairs (Count III), see id. Plaintiffs allege that there were alternatives to the van which they could have purchased at a significantly lower price. See id. ¶ 34. For each of these three counts, Plaintiffs seek judgment in the

amount of $82,754.34 plus interest, costs, and reasonable attorney's fees. See id. ¶¶ 22, 24, 29.

The Complaint also contains a claim for unjust enrichment and quantum meruit (Count IV), see id. ¶¶ 36-37. Plaintiffs allege that they provided valuable services to Expetec and conferred a benefit on Expetec for which they should be reimbursed. See id. ¶ 37. The final count is for promissory estoppel (Count V). See id. ¶¶ 38-43. Plaintiffs allege that Expetec made numerous promises to them and that they relied upon these promises in deciding to purchase a franchise and that such reliance has been to their detriment. See id. ¶¶ 39-42.

The Franchise Agreement contains an arbitration clause,[1] and Expetec has sought to have the dispute arbitrated pursuant to that clause. See Defendant's Memorandum in Support of Its Objection to Plaintiff's [sic] First Motion to Amend Complaint ("Defendant's Mem. Re Motion to Amend"), Exhibit ("Ex.") 1 (Second Declaration of Joanne H. Turner in Opposition to Plaintiffs' Motion to Amend ("Second Turner Decl."), Attachment ("Att.") (Letter from Mobley to Turner and Plamer of 5/12/05). Expetec filed its Motion to Dismiss or Stay the present action on April 29, 2005. Plaintiffs filed their Motion to Amend on May 5,

---

[1] Section 11(B) of the Franchise Agreement provides in relevant part:

> (B) Arbitration
>
> Except as specifically modified by this section, and excepting matters involving provisional remedies as set forth in section 11(B)(3), **any controversy or claim relating to this Agreement**, including default, and any claim that this Agreement, or any part, is invalid, illegal or otherwise voidable or void, **shall be submitted for arbitration before the American Arbitration Association**, in accordance with its commercial arbitration rules, or any other mutually agreed upon arbitration association.

Franchise Agreement, Section 11(B) (bold added).

2005, their Motion to Stay Arbitration on May 13, 2005, and their objection to the Motion to Dismiss on May 16, 2005, see Plaintiffs' Objection to Defendant's Motion to Dismiss and/or Stay Pending Arbitration (Doc. #10). Expetec objected to the Motion to Amend on May 16, 2005, see Defendant's Objection to Plainitiff's [sic] First Motion to Amend Complaint (Doc. #9), and to the Motion to Stay Arbitration on May 23, 2005, see Defendant's Objection to Plaintiffs' Motion to Stay Arbitration Proceedings (Doc. #12).[2]

**Discussion**

**I. Motion to Dismiss**

**A. Basis**

The basis for the Motion to Dismiss is Expetec's contention that the arbitration clause of the Franchise Agreement requires that this dispute be submitted to arbitration before the American Arbitration Association. See Defendant's Memorandum of Law in Support of Its Motion to Dismiss and/or Stay Pending Arbitration ("Defendant's Mem. Re Motion to Dismiss") at 2; see id., Att. A (Declaration of Joanne H. Turner in Support of Defendant's Motion to Dismiss and/or Stay Pending Arbitration) ("First Turner Decl."), Ex. 1 (Pages 30-31 of the Franchise Agreement). Expetec notes that it commenced arbitration against DeFazio with the American Arbitration Association in Minneapolis on March 25, 2005, see Defendant's Mem. Re Motion to Dismiss at 2, and that Plaintiffs subsequently filed this action on April 4, 2005, see id. at 3.

**B. Plaintiffs' Arguments**

Plaintiffs make three arguments in opposition to the Motion to Dismiss. First, they assert that "[t]he unambiguous language

---

[2] At the June 14, 2005, hearing, counsel advised the court that the arbitration likely would not proceed until the instant motions were decided.

of the Agreements state[s] that the disputes in question are to be resolved by Rhode Island law in Rhode Island courts ...." Memorandum of Law in Support of Plaintiffs' Objection to Defendant's Motion to Dismiss and/or Stay Pending Arbitration ("Plaintiffs' Mem. Re Motion to Dismiss") at 2. Second, Plaintiffs contend that even if the disputes concerning the Franchise Agreement are determined to be arbitrable, Count III concerning the service van pertains to conduct unrelated to the Agreements and is not subject to arbitration. See id. at 6. Third, Plaintiffs argue that "Counts IV and V are quasi-contractual remedies that would only apply if the Court grants Plaintiffs the alternative remedy of recission." Id. at 7.

In making these arguments, Plaintiffs refer to the proposed First Amended Complaint ("Amended Complaint") as if it were the operative pleading even though their Motion to Amend has not yet been granted. See Plaintiffs' Mem. Re Motion to Dismiss at 1, 7-8; see also Fed. R. Civ. P. 15(a).[3] While this circumstance does not affect the resolution of the instant motions, it makes discussion of Plaintiffs' third argument against dismissal somewhat problematic because the alternative remedy of recission (to which Plaintiffs' refer in their third argument) is pled only in the Amended Complaint. Compare Complaint with Amended Complaint. However, having noted this anomaly, the court will

---

[3] Fed. R. Civ. P. 15(a) provides in relevant part:

> (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

discuss all three arguments in its consideration of the Motion to Dismiss.

**1. The Language of the Agreements**

Plaintiffs assert that Expetec's contention that the claims pled in the Complaint or Amended Complaint are arbitrable under the Agreement "is in clear contravention of the language of the Agreements." Plaintiffs' Mem. Re Motion to Dismiss at 2. While Plaintiffs acknowledge that the Franchise Agreement contains an arbitration clause, see id., they contend that the Addendum overrides that arbitration clause, see id. at 3-6, and that the parties by that Addendum "have clearly contracted to settle disputes in Rhode Island courts under Rhode Island law, rather than use arbitration," id. at 4-5.

The court finds Plaintiffs' interpretation of the Addendum to be strained. Plaintiffs' contention that the Addendum modifies the Franchise Agreement is based on a single line which appears in the body of that document: "The Franchise Agreement is amended and revised as follows[.]" Plaintiffs' Mem. Re Motion to Dismiss, Ex. A (Addendum). Viewed in isolation, this statement supports Plaintiffs' contention. However, when the Addendum is read in its entirety and considered in relation to the Franchise Agreement and to the Uniform Franchise Offering Circular ("UFOC"), the evidence is overwhelming that the term "Franchise Agreement" is a misnomer and that the Addendum modifies the UFOC and not the Franchise Agreement. The court lists its reasons for this conclusion.

First, the Addendum bears the heading in bold type: "**ADDENDUM TO UNIFORM FRANCHISE OFFERING CIRCULAR FOR THE STATE OF RHODE ISLAND.**" Id. (underlining added).

Second, the first line of the document states:

> THIS ADDENDUM is incorporated in and made a part of the Uniform Franchise Offering Circular entered into between **COMPUTER DOCTOR INTERNATIONAL, INC.**, a South Dakota

> Corporation (Computer Doctor), 12 2nd Avenue SW, Aberdeen, South Dakota 57401, and Richard Defazio ("YOU") whose address is 90 Robins Way, Warwick, RI 02888 and is effective on the date specified in section 25 of the Franchise Agreement.

Plaintiffs' Mem. Re Motion to Dismiss, Ex. A. (Addendum) (underlining added).

Third, and most persuasive to the court, the Addendum states that it amends and revises "Item 17(v)" and "Item 17(w)." Id. The Franchise Agreement does not have an Item 17(v) or Item 17(w). See Letter from Turner to Martin, M.J., of 6/15/05, Enclosure Two (Franchise Agreement). However, the UFOC does. See id., Enclosure One (UFOC). Plaintiffs concede this fact, see Plaintiffs' Mem. Re Motion to Dismiss at 3, but still assert that "[t]he only logical place for the Addendum language is Section 11 of the Franchise Agreement ...," id., which contains the arbitration clause. The court disagrees. To the contrary, the only "logical place" for application of the Addendum language is the UFOC. The organizational terminology and numbering used in the Addendum ("Item," "17(v)," and "17(w)") correspond perfectly to the terminology and numbering used in the UFOC. See UFOC at 39. They are at odds with the organizational terminology and numbering used in the Franchise Agreement. The latter document has "Sections," see Franchise Agreement at 3 (defining "Section" or "Sections"), and the lower case letters do not extend beyond "(j)," see id., Section 17. In fact, the term "Item," which the Addendum uses to identify the provisions being modified, does not appear among the definitions contained in the Franchise Agreement. See Franchise Agreement at 2-3.

Fourth, the amendments effectuated by the Addendum correspond substantively to the referenced items of the UFOC. Item 17(v) of the UFOC is a choice of forum provision applicable to "any non-arbitration litigation between the parties ...."

Franchise Agreement at 31. Item 17(w) is a choice of law provision specifying the state law pursuant to which the Agreement is to be construed. Thus, the subject matter of the numbered items referenced in the Addendum matches exactly the subject matter of the same numbered items in the UFOC. While the subject matter of certain parts of the Franchise Agreement is similar to the subject matter of the Addendum items,[4] these parts do not correspond as closely to the subject matter of the Addendum items as do the items referenced in the UFOC.

Fifth, the Addendum does not even mention Section 11(B) of the Franchise Agreement. If the intent of the Addendum was to amend this section of the Franchise Agreement, the court can conceive of no reason why the section would not be identified by its title, namely "Section 11(B)." Plaintiffs' speculation that omission of such an obvious piece of information could be due to confusion by the drafter of the Addendum is implausible. See Plaintiffs' Mem. Re Motion to Dismiss at 3.

Sixth, the Addendum concludes by stating: "All other rights, obligations, and provisions of the Franchise Agreement shall remain in full force and effect. Only the sections specifically added to, amended, or deleted by this Addendum shall be affected." Addendum (underlining added). This requirement of specificity makes Plaintiffs' contention that the Addendum somehow eliminated the arbitration clause (Section 11(B)) and federal preemption under the federal arbitration act (Section 11(F)) without identifying either section by number and letter

---

[4] Section 11(E) of the Franchise Agreement refers to South Dakota as the forum for non-arbitration litigation between the parties. See Franchise Agreement, Section 11(E). Section 11(B) prescribes that the arbitration shall take place in Minneapolis, Minnesota, and that discovery within the context of the arbitration be conducted pursuant to the rules of civil procedure for South Dakata. See id., Section 11(B).

untenable.

Seven, the Addendum by its terms leaves in place Item 17(u) of the UFOC, the arbitration provision. See UFOC Item 17(u). If the intent of the Addendum was to eliminate the requirement that disputes be resolved by arbitration, Item 17(u) would have been specifically referenced in the Addendum.

Eight, the court finds Expetec's explanation of the interrelationship of the Addendum, the UFOC, and the Franchise Agreement persuasive, and it agrees that the documents are readily reconciled. The court reproduces that explanation:

> 1. Item 17(v) of the UFOC refers to Sections 11(E) and (F) of the Franchise Agreement. Under Section 11(B)(3), the parties are obligated to arbitrate all but a limited list of claims. Those claims not subject to arbitration are
>
>> claims relating to OUR trademarks, service marks, patents, or copyrights; [] claims related to any lease or sublease of real property between YOU and US or related entities; [] anti-trust claims; and [] requests for temporary restraining orders, preliminary injunctions, or other proceedings, in a court of competent jurisdiction, to obtain interim relief when deemed necessary to preserve the status quo or to prevent irreparable injury pending resolution by arbitration of the actual dispute between the parties.
>
> Under Section 11(E) of the Franchise Agreement,
>
>> The parties agree, and YOU consent, that any non-arbitration litigation between the parties, arising, directly or indirectly from the franchise relationship, shall be commenced and maintained either in the courts of the State of South Dakota in Aberdeen, Brown County, South Dakota, or the United States District Court, District of South Dakota, Northern Division.
>
> Therefore, the Rhode Island Addendum, by its terms,

changes Section 11(E) to provide that the non-arbitrable—but only the non-arbitrable disputes—are subject to the jurisdiction of the federal and state courts of Rhode Island.

2. Item 17(w) of the UFOC refers to Section 10(A) of the Franchise Agreement. Under Section 10(A) of the Franchise Agreements, "the parties agree that the Agreement shall be deemed made and entered into in South Dakota and shall be governed and construed according to the laws of South Dakota and the United States." Therefore, the Rhode Island Addendum, by its terms, changes Section 10(A) to provide that the Franchise Agreement shall be construed according to the laws of the state of Rhode Island.

3. Finally, Item 17(v) of the UFOC refers to Section 11(F) of the Franchise agreement. Section 11(F) of the Franchise Agreement provides:

> Regardless of any provisions of state law to the contrary, WE intend to fully enforce the provisions of this Franchise Agreement, and other documents, including all venue, choice of laws and arbitration provisions, and to rely on federal preemption under the federal arbitration act (9 U.S.C. § 1, et seq.).

The Franchise Agreement applies South Dakota law. *Section 10(A) of the Franchise Agreement , attached as Exhibit B to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Objection to Defendant's Motion to Dismiss and/or Stay Pending Arbitration ("the parties agree that the Agreement shall be made and entered into in South Dakota and shall be governed and construed according to the laws of South Dakota and the United States.").* Therefore, under the standard franchise agreement, regardless of any provision of <u>South Dakota</u> law to the contray, Expetec intends to fully enforce the provisions of the Franchise Agreement. The Rhode Island Addendum, by its terms, changes the reference to "state law" from South Dakota law to Rhode Island law. That is, the Addendum changes Section 11(F) of the Franchise Agreement to mean

> Regardless of any provisions of <u>Rhode Island law</u> to the contrary, WE intend to fully enforce the provisions of this Franchise

> Agreement, and other documents, including all venue, choice of laws and arbitration provisions, and to rely upon federal preemption under the federal arbitration act (9 U.S.C. § 1, et seq.). (*emphasis added)*.

Defendant's Reply Memorandum in Support of Its Motion to Dismiss and/or Stay Pending Arbitration ("Defendant's Reply Mem. Re Motion to Dismiss ) at 2-4 (alterations in original).

Plaintiffs note the general rule "that instruments executed 'at the same time, for the same purpose and in the course of the same transaction ... are to be considered as one instrument and are to be read and construed together,'" Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996)(quoting Old Kentucky Distrib. Corp. v. Morin, 146 A. 403, 404 (R.I. 1929))(alteration in original), and seemingly suggest that the Addendum is to be read without reference to any other document, especially the UFOC to which it plainly pertains, see Plaintiffs' Mem. Re Motion to Dismiss at 5. If so, the court rejects this suggestion. Although the Addendum was executed seven days after the Franchise Agreement was signed,[5] it can reasonably be considered to be part of the same "transaction," Rotelli v. Catanzaro, 686 A.2d at 94, i.e., the commencement of the franchisee relationship between Plaintiffs and Expetec. When the Franchise Agreement, Addendum, and UFOC are read together, they do not support Plaintiffs' interpretation of the Addendum.

Plaintiffs also cite Campbell v. Norfolk & Dedham Mutual Fire Insurance Co., 682 A.2d 933 (R.I. 1996), which holds that "[i]f the terms of an insurance contract are subject to more than one reasonable interpretation, the policy will be construed in favor of the insured to avoid forfeiture," id. at 935, and that

---

[5] At the hearing on June 14, 2005, Expetec's counsel indicated that the Addendum was inadvertently not executed by Plaintiffs when they signed the Franchise Agreement. Plaintiffs' counsel did not express any disagreement with this characterization.

the court "views the policy in its entirety and gives to its language its 'plain, ordinary and usual meaning,'" id. (citing Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 552 (R.I. 1990)). To the extent that this language is applicable to the instant case (which does not involve a contract of insurance), it fails to advance Plaintiffs' cause as Plaintiffs' interpretation of the Addendum is not reasonable for the reasons already stated. Consistent with the command to "view[] the policy in its entirety," Campbell v. Norfolk & Dedham Mut. Fire Ins. Co., 682 A.2d at 935, this court views the Franchise Agreement, the Addendum, and the UFOC in their entirety and gives these documents their "plain, ordinary and usual meaning," id. After doing so the court is compelled to reach the conclusion that the two modifications contained in the Addendum amend the UFOC and not the Franchise Agreement.

Plaintiffs assert that there is no ambiguity in the Addendum, see Plaintiffs' Mem. Re Motion to Dismiss at 5, but also maintain that were the court "to find ambiguity when reading the Addendum with Section 11 [of the Franchise Agreement], such ambiguity favors the Plaintiffs, according to Rhode Island law," id. The court disagrees with the latter proposition.[6] Under Rhode Island law, agreements are "ambiguous when they are reasonably and clearly susceptible to more than one rational interpretation." Lajayi v. Fafiyebi, 860 A.2d 680, 686 (R.I. 2004); cf. Hodor v. United Servs. Auto. Ass'n, 637 A.2d 357, 359 (R.I. 1994)("an insurance contract is ambiguous when the terms are susceptible to more than one reasonable interpretation"). The court has already determined that the meaning Plaintiffs ascribe to the Addendum is not reasonable. When the Addendum,

---

[6] The court agrees that there is no ambiguity (when the documents are read together), but disagrees with Plaintiffs' interpretation of the Addendum.

UFOC, and Franchise Agreement are read together, there is no ambiguity. Consequently, the principle that the agreements must be construed against the drafting party is inapplicable. See Employers Mut. Cas. Co. v. Pires, 723 A.2d 295, 298 (R.I. 1999) (requiring that insurance policy terms be "ambiguous or capable of more than one reasonable meaning" for principle to apply); cf. Textron v. Aetna Cas. & Sur. Co., 638 A.2d 537, 539 (R.I. 1994) ("When this court finds that an ambiguity exists or that the terms of an insurance contract are subject to more than one reasonable interpretation, the insurance contract will be strictly construed against the insurer."); Fryzel v. Domestic Credit Corp., 385 A.2d 663, 667 (R.I. 1978)(finding "clause was clearly susceptible to more than one interpretation"); A.C. Beals Co. v. Rhode Island Hosp., 292 A.2d 865, 872 (R.I. 1972)("If there is an ambiguity or any omission, the agreement must be construed against the drafting party ....").

In summary, the court finds that the Addendum did not strike the arbitration provision of the Franchise Agreement. Under the language of the Franchise Agreement, Addendum, and the UFOC, Plaintiffs have agreed to arbitrate their dispute with Expectec.

**2. Count III (the Van)**

Plaintiffs argue that even if the disputes concerning the Franchise Agreement are determined to be arbitrable, Count III concerning the service van relates to conduct unrelated to the Agreements and it is not subject to arbitration. See Plaintiffs' Mem. Re Motion to Dismiss at 6-7. Expetec counters that "Plaintiffs' Complaint specifically alleges: 'As part of the Agreements Plaintiffs were required to purchase a van that had the "Expetec" logo affixed to it.'" Defendant's Reply Mem. Re Motion to Dismiss at 4 (quoting Complaint ¶ 17). Expetec further asserts that "[t]here should be no dispute that, had Plaintiffs not purchased an Expetec franchise, they would not have purchased

the van." Id. Thus, in Expetec's view, Count III by its terms relates to the Franchise Agreement. See id. at 5.

The Supreme Court has provided guidance for courts which are asked to decide issues such as this:

> [T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act [("FAA") 9 U.S.C. § 1 et seq.,]." Moses H. Cone Memorial Hospital [v. Mercury Constr. Corp.], 460 U.S. [1], at 24, 103 S.Ct. [927], at 941. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400-404, 87 S.Ct. 1801, 1804-1806, 18 L.Ed.2d 1270 (1967); Southland Corp. v. Keating, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984). And that body of law counsels
>
> > "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, **any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration**, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital, 460 U.S., at 24-25, 103 S.Ct., at 941-942.
>
> See, e.g., Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583, 80 S.Ct. 1347, 1352-1353, 4 L.Ed.2d 1409 (1960). Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353-54, 87 L.Ed.2d 444 (1985)(last alteration in original)(bold added).

Additional guidance has been provided by the United States Court of Appeals for the First Circuit: "Where ...'there is an agreement to arbitrate, the FAA reflects a strong, well-

established, and widely recognized federal policy in favor of arbitration.'" KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42, 50 (1st Cir. 1999) (quoting Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER, 29 F.3d 727, 730 (1st Cir.), aff'd, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). Here it is indisputable that there is an agreement to arbitrate as reflected by Section 11(B) of the Franchise Agreement.

Thus, the question to be decided is whether Plaintiffs' claim that they were fraudulently induced to purchase the van, see Complaint ¶ 31, is a "controversy or claim relating to this [Franchise] Agreement ...," Franchise Agreement, Section 11(B). The court has no difficulty answering this question in the affirmative, given Plaintiffs' averment that "[a]s part of the Agreements Plaintiffs were required to purchase a van that had the 'Expetec' logo affixed to it,"[7] Complaint ¶ 17. Therefore, the court finds that controversy pertaining to the van is subject to arbitration.

### 3. Counts IV (Unjust Enrichment and Quantum Meruit) and V (Promisory Estoppel)

Plaintiffs assert that the "allegations in Counts IV and V are not properly viewed as 'concerning the Franchise Agreement,'" Plaintiffs' Mem. Re Motion to Dismiss at 8, and that for this reason they not subject to arbitration, see id. Plaintiffs also note that these causes of action "would by their very nature only become pertinent if the Agreements, and the arbitration clause, are vanquished." Id.

---

[7] This averment does not appear in Plaintiffs' Amended Complaint. Compare Complaint ¶ 17 with Amended Complaint ¶ 17 ("On or about September, 2003 Plaintiffs purchased a service van, or, so-called 'Technical Assault Vehicle' (the 'Van') from the Company."). The court discusses Plaintiffs' proposed alternative phrasing of ¶ 17 in its consideration of the Motion to Amend infra.

Pursuant to Section 11(B) of the Franchise Agreement, Plaintiffs agreed to arbitrate "any controversy or claim relating to this Agreement, including default, **and any claim that this Agreement is invalid, illegal or otherwise voidable or void** ...." Franchise Agreement, Section 11(B) (bold added). Although Plaintiffs claim that they were fraudulently induced to finance their purchase of the franchise with a short-term loan, see Complaint ¶ 26, and fraudulently induced to purchase the van from Expetec, see id. ¶ 31, Plaintiffs do not claim that they were fraudulently induced to purchase the franchise. There is nothing in their pleading or other filings which would indicate that their claims for quasi-contractual relief (Counts IV and V) arise from anything else other than the franchise itself. As a result, Plaintiffs quasi-contractual claims relate either to the Franchise Agreement or to Plaintiffs' claims that the Franchise Agreement is "invalid, illegal or otherwise voidable or void ...," Franchise Agreement, Section 11(B). That being the case, Counts IV and V are within the scope of the arbitration clause.

### C. Conclusion Re Motion to Dismiss

For the reasons stated above, I find that all of the claims in the Complaint are arbitrable. "[W]here all the issues presented in a lawsuit are arbitrable, the district court may exercise its discretion to dismiss the complaint." Large v. Conseco Fin. Servicing Corp., 167 F.Supp.2d 203, 207 (D.R.I. 2001). Accordingly, I recommend that the Motion to Dismiss be granted.

## II. Motion to Amend

### A. Amended Complaint v. Complaint

The Amended Complaint appears to differ from the Complaint in three respects. First, the Amended Complaint adds a demand for rescission under the Rhode Island Franchise Investment Act,

R.I. Gen. Laws § 19-28.1-21(a),[8] to Counts II, IV, and V. See Amended Complaint, prayer for relief for Counts II, IV, and V.

This proposed change does not negate Plaintiffs' obligation to arbitrate their dispute with Expetec. Provisions of state law, which purport to require litigation, rather than arbitration, violate the FAA. See KKW Enters. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42, 51 (1st Cir. 1999)(holding that R.I. Gen. Laws § 19-28.1-14's requirement that all claims arising under the Rhode Island Franchise Investment Act be brought in Rhode Island is preempted by § 2 of the FAA); see also Perry v. Thomas, 482 U.S. 483, 491, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987) (finding California statute which required litigants be provided a judicial forum for resolving wage disputes conflicted with § 2 of the FAA and that "under the Supremacy Clause, the state statute must give way."); Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984)("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitation.").

Second, the Amended Complaint does not allege that as part of the Agreements Plaintiffs were required to purchase a van but

---

[8] R.I. Gen. Laws § 19-28.1-21(a) provides:

> A person who violates any provision of this act is liable to the franchisee for damages, costs, and attorneys and experts fees. In the case of a violation of §§ 19-28.1-5, 19-28.1-8, or 19-28.1-17(1) -- (5), the franchisee may also sue for rescission. No person shall be liable under this section if the defendant proves that the plaintiff knew the facts concerning the violation.

R.I. Gen. Laws § 19-28.1-21(a) (1998 Reenactment).

only alleges that Plaintiffs purchased a service van from Expetec on or about September, 2003. <u>See</u> Amended Complaint ¶ 17. This change would negate the reason which the court stated earlier for concluding that Count III was arbitrable. <u>See</u> Discussion section I.B.2. <u>supra</u> at 15 (noting that Plaintiffs allege that the purchase of the van was "part of the Agreements"). Thus, the court must determine whether the claim stated in the proposed amended Count III is arbitrable. The court concludes that it is.

Bearing in mind the Supreme Court's admonitions that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. at 24-25, 103 S.Ct. at 941, and "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration ...," <u>Mitsubishi Motors Corp. v. Soler Chysler-Plymouth, Inc.</u>, 473 U.S. at 626, 105 S.Ct. at 3353, and taking into account the broad scope of the arbitration clause here, <u>see</u> n.1, the court finds that the controversy pertaining to the van is related to the Franchise Agreement. The court notes that the purchase occurred close in time to the parties entering into the Franchise Agreement. <u>See</u> Amended Complaint ¶¶ 5, 17. The Franchise Agreement required Plaintiffs to "[m]aintain a vehicle (as specified in the Trademark and Identity Standards Manual) ...." Franchise Agreement, Section 6(A)(20). The allegedly fraudulent representations about the van all relate to equipment the purpose of which presumably was to enable Plaintiffs to fulfill their obligations under the Franchise Agreement. <u>See</u> <u>id.</u>, Section 6(A)(5) (requiring Plaintiffs to provide customers with prompt, efficient, high quality service); <u>id.</u>, Section (7) (requiring Plaintiffs to operate the business as an Expetec System franchise using trademarks, service marks, and distinguishing characteristics required by Expetec); <u>id.</u>, Section (15)

(requiring Plaintiffs to maintain equipment of the type that Expetec requires for the proper operation of Plaintiffs' business); id., Section 6(C)(3) (requiring Plaintiffs to display on their vehicle, two or more signs approved by Expetec). Lastly, it appears that the only relationship which existed between Plaintiffs and Expetec was the franchise relationship and that if Plaintiffs had not purchased an Expetec franchise, they would not have purchased the van. Thus, for these reasons the dispute reflected in the proposed amended Count III is arbitrable.

Third, the Amended Complaint alleges that as to Count I (Breach of Contract) "[t]he Agreements constituted a legal contract enforceable at law," Amended Complaint ¶ 23, but specifically excludes this allegation as to Counts II, III, IV, and V, see id. ¶¶ 25, 30, 36, 38. This proposed change appears to be an attempt to eliminate the inconsistency in pleading that the Franchise Agreement and promissory note are simultaneously enforceable and void. See Complaint ¶ 6 (alleging the Agreements constitute a legal contract enforceable at law); id. ¶¶ 36, 38 (incorporating ¶ 6 into Counts IV and V even though these counts plead quasi-contractual remedies which arise only if the Franchise Agreement is rescinded). While this amendment would remove the internal conflict in Plaintiffs' pleading, for the same reasons previously expressed, such amendment would not cause the court to alter its determination that Counts IV and V are within the scope of the arbitration clause. See Discussion section I.B.3. supra at 15-16.

**B. Conclusion Re Motion to Amend**

For the reasons stated above, the court finds that all of the claims asserted in the Amended Complaint are subject to arbitration under the terms of the parties' agreements. Consequently, the Motion to Amend is futile and will be denied by

separate order. See Order Denying Motion to Amend dated September 6, 2005.

**III. Motion to Stay**

Plaintiffs seek to stay all proceedings towards the arbitration of this matter until such time as Expetec's Motion to Dismiss and Plaintiffs' Motion to Amend are decided. See Motion to Stay. Plaintiffs contend that "they have moved to amend the complaint in this case in a manner which casts significant doubt over the case's arbitrability." Id. However, the court has already determined that the claims pled in the proposed Amended Complaint are arbitrable and that the Motion to Amend should be denied. The court has also already determined that Expetec's Motion to Dismiss should be granted. Accordingly, there is no basis for granting the Motion to Stay. Therefore, I recommend that it be denied.

**Conclusion**

For the reasons stated above, I recommend that Expetec's Motion to Dismiss be granted and that Plaintiffs' Motion to Stay be denied. The Motion to Amend is denied by separate order issued this same date.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

DAVID L. MARTIN
United States Magistrate Judge
September 6, 2005