**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD DEFAZIO; and RLD TECHNOLOGIES, INC** | : | |
| **Plaintiffs** | : | |
| v. | : | **C.A. No. 2005-180-S** |
| **EXPETEC CORPORATION f/k/a COMPUTER DOCTOR INTERNATIONAL, INC,** | : | |
| **Defendant** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION**

**Introduction**

This case concerns a dispute over the dissolution of a franchise relationship. The individual Plaintiff, Richard DeFazio, operated an Expetec (formerly Computer Doctor International) franchise from September of 2003, until February of 2005. Plaintiffs and Defendant signed a Franchise Agreement on or about September 17, 2003, and an "Addendum to Uniform Franchise Offering Circular for the State of Rhode Island (the "Addendum") (both collectively hereinafter referred to as the "Agreements") on or about September 24, 2003.

On June 14, 2005, Magistrate Martin heard oral argument on Plaintiffs' Motion to Amend Complaint, Defendant's Motion to Dismiss, and Plaintiffs' Motion to Stay Arbitration. On September 6, 2005, Magistrate Martin issued a Report and Recommendation, (hereinafter "Report") recommending that Defendant's Motion to Dismiss be granted, and that Plaintiff's Motion to Amend Complaint and Motion to Stay

Arbitration be denied. Plaintiffs respectfully object to Magistrate Martin's Report and Recommendation, as it is erroneous in both its factual and legal interpretations.

## ARGUMENT

### I. The Magistrate disregarded crucial contentions and facts in finding that the language of the Agreements support the Arbitration of Counts I and II of this dispute.

None of the parties dispute that the Franchise Agreement was signed on or about, September 17, 2003, and that the Rhode Island Addendum to the Uniform Offering Circular was independently signed on or about, September 24, 2003. At no point does the Franchise Agreement explicitly or implicitly incorporate the original Uniform Offering Circular. In basic contract terms, the UFOC is an offer. Without being incorporated into the Franchise Agreement it becomes a legal nullity.

Accordingly, the Magistrate's contention that "when the Addendum is read in its entirety and considered in relation to the Franchise Agreement and to the Uniform Franchise Offering Circular ("UFOC"), the evidence is overwhelming that the term 'Franchise Agreement' is a misnomer and that the Addendum modifies the UFOC and not the Franchise Agreement" is fundamentally flawed. See Report, p.6 (attached as Exhibit A). The UFOC cannot be modified after the parties signed the Franchise Agreement, which deliberately failed to incorporate the UFOC. Regardless of any section headings, or other drafting irregularities, only the Franchise Agreement can be modified. This basic rule of contract construction, combined with the statement in the Addendum that "The Franchise Agreement is amended and revised as follows," points to the conclusion that the Franchise Agreement has been modified to allow for the litigation of this matter in the courts of the State of Rhode Island.

Alternatively, the ambiguities and erratic drafting of the Agreements ought to be construed against the drafting party, the Defendant. See e.g., A.C. Beals v. Rhode Island Hosp., 110 R.I. 275, 292 A.2d 865, 872 (1972) (stating that any ambiguities or omissions in an agreement are to be construed against the drafting party). Defendant's attempt to boilerplate around this longstanding rule is an affront to equity and fair dealing.

**II. Even if disputes concerning the Franchise Agreement are found to be arbitrable, the Magistrate disregarded crucial contentions and facts in finding that Count III of the Complaint concerning the "technical assault vehicle" (TAV) was a controversy or claim related to the Franchise Agreement and therefore arbitrable.**

The Magistrate's synopsis of the judicial preference for arbitration of issues where there is a question as to the scope of an arbitration agreement is accurate, but misapplied to the facts of this case. Plaintiffs' statement that as 'part of the Agreements Plaintiffs were required to purchase a van that has the 'Expetec' logo affixed to it" does not relate the specific purchase of the specific vehicle at issue to the Franchise Agreement, and presumptively the arbitration clause. An apparently blanket limitless application of a "but for" test (but for the Franchise Agreement the TAV would not have been purchased, therefore anything relating to the purchase concerns the Franchise Agreement) is inappropriate and unsupported by authority.

As detailed at length in Plaintiffs' Memorandum concerning Defendant's Motion to Dismiss, and at oral argument, the purchase of the TAV (at a price of $22,500 and not networked or equipped for on-site repairs as was promised prior to purchase both orally and in Expetec literature) was not a required portion of the Franchise Agreement, but in fact a separate transaction conducted by separate paperwork and terms.

The Franchise Agreement only required the Plaintiffs to "Maintain a vehicle (as specified in the Trademark and Identity Standards Manual) in a neat, clean, and undamaged condition; the vehicle must be mechanically sound and white in color with the appropriate System marks affixed." See Franchise Agreement Section 6(A)(20) p 12. There is no logical reading of these terms that require the purchase of the TAV. A clean, neat, white, well-maintained van could have been purchased anywhere for a wide range of potential costs. The Franchise Agreement contains no inducements to buy the TAV, nor any references to it whatsoever. It was only through separate literature and separate statements to Mr. DeFazio, that the purchase of the TAV was induced.

This Court could potentially find that there was no breach of the Agreements, but that separate communications by and documents of the Defendant regarding the van did constitute fraud. Or that Defendants committed fraud regarding both deals. Either way, the inquiries are largely, if not exclusively separate. By Expetec's contention, and under the Magistrate's apparent but-for test, there is no limit to apply any speech or conduct of Expetec to the Franchise Agreement. Without some form of limitation, a claim for personal injury due to food poisoning at the training seminar luncheon would be "relating to" the Franchise Agreement, and therefore arbitrable. This cannot be the appropriate way to determine whether or not a claim relates to a contract, regardless of whether or not an arbitration clause is at issue. Without an implicit or explicit reference to the TAV in the Franchise Agreement, Plaintiff's claim concerning the TAV does not concern the Agreement and is not arbitrable.

III. **If the Court were to find that the Magistrate erred in finding that the arbitration clause of the Franchise Agreement survives the Rhode Island Addendum, Counts IV and V are valid quasi-contractual remedies that would apply if the Court were to grant Plaintiffs the alternative remedy of rescission**.

Rhode Island General Laws § 19-28.1-21 states that, as part of certain suits under the Franchise Investment Act, "the franchisee may also sue for rescission" of the relevant franchise agreement(s). If the Agreements are found to have eliminated the arbitration clause, claims under the Agreements are subject to the jurisdiction of Rhode Island courts. Accordingly, if rescission of the agreements under the Franchise Investment Act were found to be an appropriate remedy, Plaintiffs would need to resort to the quasi contractual relief which they have pleaded: unjust enrichment, quantum meruit and promissory estoppel. Whether or not these remedies are related to the Agreements is of no moment, as they would by their very nature only become pertinent if the Agreements, and the arbitration clause, are vanquished. Therefore Plaintiffs' allegations in Counts IV and V are not properly viewed as "concerning the Franchise Agreement," but nevertheless should remain at issue if the Court decides to maintain jurisdiction of any and all parts of this matter.

IV. **Due to the fact that the date of this matter is scheduled to be arbitrated in Minnesota on October 14, 2005 (pending Plaintiffs' request for a continuance to allow complete judicial resolution of this matter), Plaintiff's Motion to Stay Arbitration should be granted so as to allow for said complete judicial determination of this matter**.

The Magistrate noted in footnote 2 of the Report that at "the June 14, 2005, hearing, counsel advised the court that the arbitration likely would not proceed until the instant motions are decided." See Exhibit A, p.4. It is conspicuous that the Magistrate referred to "counsel," indicating counsel for both sides. Based on the rapidly

approaching date of the arbitration, and the need to decide these motions fairly and completely, Plaintiff's Motion to Stay Arbitration has a renewed urgency. It would be unreasonable to have both parties prepare for arbitration when judicial resolution could occur at any time. The most equitable way to resolve this matter, is to stay the arbitration until the motions of both parties have been decided

**CONCLUSION**

For the reasons stated herein, the Court should reject the Report and Recommendation of the Magistrate and Defendant's Motion to Dismiss and/or Stay Pending Arbitration should be denied, while Plaintiff's Motion to Stay Arbitration should be granted. Plaintiffs are amenable to additional oral argument on this matter, if the Court deems it to be necessary for the resolution of this matter.

Respectfully Submitted,

Plaintiffs Richard DeFazio and
RLD Technologies, Inc.
By Their Attorneys

Michael A. Marciano, Esq. #6486
R. Park Palmer, Jr., Esq. #6944
Kaplan & Associates Inc.
1100 Turks Head Building
Providence, RI 02903
Telephone: 401-272-9000
Facsimile: 401-272-9020

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of September, 2005, I mailed a true copy of the within "Memorandum in Support of Plaintiffs' Objection to Defendant's Motion to Dismiss and/or Stay Pending Arbitration" via first-class mail, postage prepaid to:

Steven M. Richard, Esq.
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (Facsimile)

Joanne H. Turner, Esq.
Mackall Crounse & Moore PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402
(612) 305-1400
(612) 305-1414 (Facsimile)

Renee R. Mobley
Case Manager
American Arbitration Association
13455 Noel Road Suite 1750
Dallas, TX 75240
(972) 702-8222
(972) 490-9008

Michael D. Madigan, Esq.
Arbitrator
Madigan, Dahl & Harlan, P.A.
701 Fourth Avenue South Suite 1700
Minneapolis, MN 55415
(612) 604-2000
(612) 604-2599 (Facsimilie)
By Facsimile Only by Agreement