**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICHARD DEFAZIO; and RLD TECHNOLOGIES, INC** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. 2005-180-S** |
| **EXPETEC CORPORATION f/k/a COMPUTER DOCTOR INTERNATIONAL, INC,** | : | |
| **Defendant** | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S REQUEST FOR ADDITIONAL AUTHORITY**

On October 21, 2005, the Court heard oral argument on Plaintiffs' Objection to the Magistrate's Report and Recommendation. At the close of the hearing, the Court asked for additional argument and authority on two issues: (1) whether the magistrate's consideration of the Uniform Franchise Offering Circular and other documents converted Defendant's Motion to Dismiss into a motion for summary judgment; and (2) whether or not claims for fraud are arbitrable, based upon the preclusion of punitive damages in the Franchise Agreement. Plaintiffs contend that Defendant's motion is not convertible into a summary judgment motion, and that the arbitration clause does not waive claims for fraud, even if claims for punitive damages are deemed to be waived.

I. **Defendant's Motion to Dismiss was not a 12(b)(6) motion and thus should not be converted to a motion for summary judgment.**

According to Fed. R. Civ. P. 12(b)

If on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In the instant matter, no part of any of Defendant's motions or memoranda ever referred to its motion as a 12(b)(6) motion. The 12(b)(6) standard was never outlined, argued in court, or otherwise referenced. The only contention that the Defendant has ever offered, is that the case should be arbitrated.

A 12(b)(6) motion, by its very nature, cuts to the merits of Plaintiff's claim. Although consideration of documents outside the pleadings can in some circumstances convert a 12(b)(6) motion to a summary judgment motion, Defendant has not answered Plaintiffs' Complaint nor in any other way responded to the merits of Plaintiffs' claims, and thus has not either explicitly, or implicitly, made a 12(b)(6) motion. The Defendant asked for dismissal and/or stay pending arbitration. Granting a motion for summary judgment would in effect be a judgment on the merits of the Plaintiffs' claim. A final judgment on the merits of the claims would severely prejudice Plaintiffs' ability to arbitrate their claims, if the Court deems that the claims are arbitrable. Such prejudice is not a just result of a motion that is not on its face or by its interpretation intending to be dispositive of the merits of Plaintiffs' claims

Alternatively, if the Court finds that the Defendant finds that a 12(b)(6) motion can be inferred from Defendant's posturing, the Court should not convert the motion to one for summary judgment. The Court of Appeals for the First Circuit has allowed for the consideration of public records and documents attached or sufficiently referred to in the complaint, without converting a 12(b)(6) motion into one for summary judgment. See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). In Alternative Energy, the Court considered a settlement agreement that was

referenced in the complaint, expressly linked to the Plaintiff's factual allegations, and where there were no questions of authenticity. Id. at 33-34. Here, as in Alternative Energy, the UFOC and the Franchise Agreement are crucial to Plaintiffs' claims, referenced in the Complaint and are unquestionably authentic. Accordingly, even if a 12(b)(6) motion is found to be present, the documents considered by the Magistrate do not covert the motion to one for summary judgment.

II. **Plaintiffs' claims of fraud have not been waived by any provision of the contract, and are not arbitrable under an attempt to waive punitive damages.**

We were unable to locate Rhode Island authority that clearly described whether a party can waive a fraud claim by contract, and if so, the specificity required to execute such a waiver. However, it has long been established that Rhode Island courts should turn to Delaware in corporate and commercial matters where Rhode Island law is inconclusive. See Bove v. Community Hotel Corp., 105 R.I. 36, 53, 249 A.2d 89, 98-99 (1969); Dowling v. Narragansett Capital Corp., 735 F. Supp. 1105, 1116 (D.R.I. 1990). The recent case of In re Medical Wind Down Holdings III, Inc., 2005 WL 2456261 (United States Bankruptcy Court District of Delaware, October 5, 2005), reviewed the Delaware law concerning the waiver of fraud claims.

The Court notes that while some contractual disclaimers to prohibit fraud are permitted, "a clause to bar such a claim must be explicit." Id. at 7. The Court also stated the long held policy that Delaware is "intolerant of fraud," and that that therefore "the intent to preclude reliance on extra-contractual statements must emerge clearly and unambiguously from the contract." Id.; *quoting* Kronenberg v. Katz, 872 A.2d 568, 593), *aff'd without op.,* 867 A.2d 902 (Del. 2005). Further, Katz explains that "contractual

provisions cannot preclude reasonable reliance unless they constitute, when taken together, a clear promise by the plaintiffs that they were relying only on the representations in the contract itself." 872 A.2d at 575.

The Court provides examples of language that has been found to indicate such a preclusion including "Party has not executed ... [the] instrument in reliance upon any such promise, representation or warranty ... Buyers confirm that they have not relied on any warranty, representation, indemnity, covenant or undertaking ... and [t]he parties further declare that they have not relied upon any representation." Medical Wind, at 7, *internal cites omitted.*

In the instant case, no such language exists. As stated at the October 21, 2005 hearing, there is no "Entire Agreement" clause or "Merger Clause" or any similar clause in the Franchise Agreement. The Agreement does not bar, explicitly or otherwise, the consideration of representations made in negotiation or at any time prior to signing the Agreement. There is no "clear promise" of any limitations on reliance. Thus, according to well reasoned Delaware law, Plaintiffs have not waived making a claim of fraud.

The Agreement's lack of limitation of reliance precludes a fraud claim from being subject to arbitration. Section 11 (B)(1) of the Franchise Agreement states in pertinent part that "any controversy or claim relating to this Agreement, including default, and any claim that this Agreement, or any part, is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration." Count II of Plaintiffs' Complaint concerning inducement to take a short term loan, and Count III of Plaintiffs' Complaint concerning the fraudulent inducement to buy a van do not dispute the language of the Agreements, or their validity as written. The loan referenced in Count II is not a part of the Franchise

Agreement. The fraud at issue is the inducement to take the loan, consisting of false promises of obtaining other financing, false inflation of statistical success and falsely stating that there is an Expetec system of unified methods of performing service. The inducement of the loan, induced the signing of the Franchise Agreement. Similarly, the purchase of the van does not concern or dispute the language or validity of the Franchise Agreement. In fact, Count III concerns a transaction that is completely separate from the terms of the Agreement.[1] Accordingly, the inducement to purchase the van is not arbitrable.

The validity of the waiver of punitive damages is not of major concern to the Plaintiffs, at this juncture. Even if the waiver is deemed to be knowing, valid, and applicable to fraud claims, the waiver does not effect the arbitrability of the fraud claims. Plaintiffs are willing to argue the fraud claims in Court, with only actual damages available, pursuant to the Agreement's waiver of punitive damages.

## CONCLUSION

For the reasons stated herein, the Magistrate's Report and Recommendation should not be adopted by the Court as to Counts II and III of the Complaint, as they state claims for fraud that are not subject to arbitration, by the terms of the Franchise Agreement. Alternatively, Plaintiffs' Complaint should be dismissed without prejudice as the Defendant never made a 12(b)(6) motion, making a conversion of Defendant's motion to a motion for summary judgment procedurally invalid.

[1] As stated at length in both the Objection to the Magistrate's Report and Recommendation and at oral argument, Plaintiffs contend that the purchase of the Technical Assault Vehicle from a third party (as Expetec is not a licensed vehicle dealer and could not sell a vehicle and have Mr. DeFazio register it in Rhode Island), rather than any other white vehicle, was not required by the Franchise Agreement, and thus the inducement to purchase is not a matter "relating to" the Franchise Agreement.

Respectfully Submitted,

Plaintiffs Richard DeFazio and
RLD Technologies, Inc.
By Their Attorneys

Michael A. Marciano, Esq. #6486
Kaplan & Associates Inc.
1100 Turks Head Building
Providence, RI 02903
Telephone: 401-272-9000
Facsimile: 401-272-9020

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of November, 2005, I mailed a true copy of the within "Plaintiffs' Memorandum of Law in Response to the Court's Request for Additional Authority" via first-class mail, postage prepaid to:

Steven M. Richard, Esq.
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (Facsimile)

Joanne H. Turner, Esq.
Mackall Crounse & Moore PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402
(612) 305-1400
(612) 305-1414 (Facsimile)

Renee R. Mobley
Case Manager
American Arbitration Association
13455 Noel Road Suite 1750
Dallas, TX 75240
(972) 702-8222
(972) 490-9008